Lessor: GSL of Ill, LLC

Lessee: Craig D. Kroskob and
Lisa Kroskob, his wife and dba
Kroskob Farms

Address:   4131 S. State St.
Chicago, Ill 60609
Telephone No. 847-780-1006

Address: 11491 County Rd. 12
Ft. Morgan, CO. 80701
Telephone No. 970-867-2017

Telefax No. 847-780-1008
E-mail:   nlynn50@aol.com

Telefax No. 970-867-9600

E-mail: NA

State of Proprietorship, Incorporation or
Organization if a corporation or LLC:
Colorado

Lease No. _____

Lease Effective Date: June 1, 2006

## EQUIPMENT LEASE AGREEMENT

This Equipment Lease Agreement ("Lease Agreement") is made and entered into on the Lease Effective Date, at Chicago, Illinois, by and between Lessor and Lessee.

   1.  **Background.**  Lessee has requested that Lessor acquire from the "Supplier" and/or any other third party (identified in Schedule "A"), and lease to Lessee the equipment and/or other assets listed in Schedule "A" (collectively, the "Equipment"). Lessor is willing to acquire such Equipment and lease the same to Lessee, but only upon the terms and conditions set forth in this Lease Agreement. Lessor and Lessee agree that this Lease Agreement is a "Finance Lease" as defined in Section 2A-103(g) of the Uniform Commercial Code ("UCC"). NOTWITHSTANDING ANY PROVISION HEREIN TO THE CONTRARY, ALTHOUGH THE PARTIES HERETO HEREBY ACKNOWLEDGE THAT THIS LEASE IS A "FINANCE LEASE", IN THE EVENT THAT IT SHALL BE DETERMINED BY ANY AUTHORITY THAT THIS IS NOT A "FINANCE LEASE" THEN THE LESSEE HEREBY, FOR VALUABLE CONSIDERATION, RECEIPT WHEREOF IS HEREBY ACKNOWLEDGED, HEREBY GRANTS UNTO THE LESSOR A SECURITY INTEREST IN, AND MORTGAGES TO THE LESSOR THIS LEASE, THE EQUIPMENT THAT IS THE SUBJECT MATTER OF THIS LEASE AND ALL ADDITIONS AND ACCESSIONS THERETO AND ALL PRODUCTS AND PROCEEDS THEREOF TO SECURE PAYMENT OF THE OBLIGATIONS OF LESSEE TO LESSOR AS CONTEMPLATED HEREIN AND THIS LEASE SHALL BE DEEMED A SECURITY AGREEMENT/CHATTEL MORTGAGE FOR ALL PURPOSES HEREIN AND/OR UNDER THE UCC FOR ANY JURISDICTION WHERE THE LESSEE MAY THEN HAVE ANY ASSETS LOCATED AND THIS LEASE SHALL BE CONSTUCTED IN ACCORDANCE WITH THE UCC FOR THE APPLICABLE JURISDICTION. Lessee acknowledges that Lessor has advised Lessee, in writing, either previously or through this Lease Agreement, of the identity of the Supplier, that Lessee may have rights under the contract between Lessor and Supplier with respect to the Equipment and that Lessee may contact the Supplier regarding such contract or for a description of any such rights.

   2.  **Disclaimer of Warranties and Waiver of Defenses.** Lessee acknowledges and agrees that.

      2.1   Lessor is not the manufacturer of the Equipment nor the manufacturer's agent, nor a dealer therein;

Page 1 of 16

EXHIBIT

2

2.2   the Equipment is of a size, design, capacity, description and manufacture selected solely by Lessee;

2.3   Lessee is satisfied that the Equipment is suitable and fit for Lessee's purposes;

2.4   **LESSOR HAS NOT MADE AND DOES NOT MAKE ANY REPRESENTATION, WARRANTY OR COVENANT, EXPRESS OR IMPLIED, TO ANYONE, WITH RESPECT TO THE MERCHANTABILITY, DESIGN, CONDITION, DURABILITY, SUITABILITY, CAPACITY, QUALITY, CONDITION, PERFORMANCE, FITNESS FOR USE OR ANY PARTICULAR PURPOSE OR ANY OTHER ASPECT OF THE EQUIPMENT OR ITS MATERIAL OR WORKMANSHIP, LESSOR'S TITLE TO THE EQUIPMENT OR ANY OTHER REPRESENTATION, WARRANTY OR COVENANT WHATSOEVER;**

2.5   Lessor disclaims and shall not be liable to Lessee for any loss, damage, injury or expense of any kind or nature caused, directly or indirectly, to Lessee or any third party by the Equipment, as a result of any defects, latent or otherwise, in the Equipment or the use or maintenance thereof or the failure or operation thereof, or the repair, service or adjustment thereof, or by any delay or failure to provide any such maintenance, repairs, service or adjustment, or by any interruption of service or loss of use thereof or for any loss of business howsoever caused;

2.6   no defect or unfitness of the Equipment shall release Lessee of the obligation to pay any installment of "Rent" (defined in Paragraph 6) or any other obligation under this Lease Agreement;

2.7   as to Lessor, Lessee leases the Equipment "AS IS", "WHERE IS" and "WITH ALL FAULTS";

2.8   Lessor shall have no obligation to install, maintain, erect, test, adjust or service the Equipment, and it shall be the obligation of Lessee to perform or cause the same to be performed by qualified third parties;

2.9   Notwithstanding anything to the contrary contained in this Lease Agreement, Lessor shall not, under any circumstances, be liable to Lessee or any third party for consequential, incidental, special or exemplary damages arising out of or related to this Lease Agreement ,whether in an action based on contract, tort (including negligence or strict liability) or any other legal theory, including, without limitation, loss of anticipated profits or benefits or use or loss of business, even if Lessor is appraised of the likelihood of such damage occurring;

2.10   It is expressly understood and agreed that each and every provision of this Lease Agreement which provides for a limitation of liability, disclaimer of warranties or exclusion of damages is intended to be severable from any other provision and is a separate and independent element of risk allocation and is intended to be enforced as such;

2.11   Lessor makes no representation or warranty to Lessee as to the treatment of this Lease Agreement for tax or accounting purposes; and

2.12   Neither the manufacturer or Supplier of the Equipment, nor any salesman, representative or other agent of the manufacturer or Supplier, is an agent of Lessor, and no salesman, representative or agent of the manufacturer or Supplier is authorized to waive or alter any term or condition of this Lease Agreement and no representation as to the Equipment or any other matter by the manufacturer or Supplier shall in any way affect Lessee's duty to pay Rent and perform its other obligations as set forth in this Lease Agreement.

3.   **Acceptance or Rejection of Equipment.**   Unless the Equipment shall already be in the possession of the Lessee, Lessor shall have the sole discretion as to where the Equipment shall be made available to Lessee for inspection, whether that be at its then-current location, at Lessee's location upon delivery to Lessee, or otherwise.  Lessee shall inspect the Equipment promptly at the location at which it is made available by Lessor for inspection by Lessee.  If the Equipment is acceptable to Lessor, Lessee shall immediately accept such Equipment for lease hereunder by executing and delivering to Lessor a Certificate of Inspection and Acceptance in the form attached hereto as Schedule "B" ("Acceptance Certificate").   If Lessee fails to execute and deliver to Lessor the Acceptance Certificate within ten (10) days after the Equipment has been made available for inspection by Lessee, Lessee shall be deemed to have rejected the Equipment and the parties shall have no further obligation to one another under this Lease Agreement.

4. **Term.** The term of this Lease Agreement ("Term") shall commence on the date set forth in Schedule "A", or in the absence of any such indication, on the date the Equipment is shipped to Lessee (collectively the Commencement Date") and shall terminate on the Expiration Date set forth in Schedule "A".

5. **Non-Cancellability of Lease Agreement.** SUBJECT TO PARAGRAPH 21 HEREOF, THIS LEASE AGREEMENT CANNOT BE CANCELLED BY LESSEE DURING THE TERM HEREOF.

6. **Rent.** Lessee shall pay Lessor periodic rent for the Equipment in the amount set forth on Schedule "A" ("Rent"). The first payment of Rent is due upon the execution of this Lease Agreement by Lessee and, subsequent payments of Rent are due during the Term on the first day of each consecutive, successive month after the month in which the Commencement Date occurs.

6.1   Lessee's obligation to pay Rent is unconditional and irrevocable and is due and payable without notice or demand on or before the fifth (5th) day of each and every month. Lessee has no right of prepayment unless specifically granted to Lessee in a writing signed by Lessor.

6.2   Lessee shall pay upon demand by Lessor, to the extent not prohibited by law, a collection service charge of Ten Dollars ($10.00) or five percent (5%) of any delinquent payment of Rent, whichever is greater, plus interest on such delinquent Rent from the due date until paid at the rate of three percent (3%) per month or the highest contract rate from time to time permitted by law, whichever is less.

6.3   Upon execution of this Lease Agreement, Lessee shall deliver to Lessor the "Lease Fee" set forth in Schedule "A" and a security deposit in the amount set forth in Schedule "A" ("Security Deposit"). Lessor may, at its sole option, apply this Security Deposit to cure any default of Lessee hereunder, and in such event, Lessee shall promptly restore such Security Deposit to its original amount. At Lessor's discretion, the Security Deposit may be applied as the last month's Rent if Lessee is then current with all prior Rent payments hereunder. Rent payments are to be wire transferred for the account of Lessor as set forth in Schedule "A", except as otherwise directed by Lessor.

6.4   Failure by Lessor to collect Rent when due or to exercise its right to take possession of the Equipment upon Lessee's failure to pay Rent as hereinafter provided, will not waive or in any way affect Lessor's rights under this Lease Agreement or extend the time for Lessee to make payments of Rent.

7. **Location and Inspections.** At all times during the Term, Lessee shall maintain the Equipment in Lessee's possession and control at the Equipment location designated in Schedule "A" or at such other location to which the Equipment may have been moved with the prior written consent of Lessor. Whenever requested by Lessor, Lessee shall advise Lessor in writing as to the exact location of the Equipment. Lessee covenants and agrees that Lessor, during business hours, may enter the premises where the Equipment is located from time to time and inspect the same, and Lessee shall take all steps necessary to allow Lessor such access. Notwithstanding the foregoing, the Lessor shall have the right to have an Equipment appraised on an annual basis and the Lessee shall be responsible for all of the costs and expenses thereof in an amount not to exceed $4,000 per visit plus travel expenses.

8. **Title to the Equipment.** The Equipment is, and shall at all times during the Term, remain Lessor's property, and Lessee shall have no right, title or interest therein, except as set forth in this Lease Agreement.

8.1   If Lessor supplies Lessee with labels, name tags or other identification materials indicating that the Equipment is owned by Lessor, Lessee shall affix such labels, name tags and other identification materials to and keep them in a prominent place on the Equipment and maintained in legible condition at all times during the Term.

8.2   To the extent serial numbers of any Equipment are not provided on Schedule "A", Lessee hereby authorizes Lessor to insert in Schedule "A" the serial numbers and other identification data of the Equipment when such are determined by Lessor.

8.3    Lessor is also hereby authorized by Lessee, at Lessee's expense, to cause this Lease Agreement or any statement or other instrument in respect of this Lease Agreement showing the interest of Lessor in the Equipment, including UCC financing statements, to be filed or recorded and refiled and re-recorded, as may be necessary, and grants Lessor the right to execute Lessee's name thereto; Lessee agrees to pay or reimburse Lessor for any searches, filings, recordings or stamp fees or taxes arising from the filing or recording of any such instrument or statement.

8.4    Lessee shall execute and deliver to Lessor, upon Lessor's request, such other and further instruments and assurances as Lessor deems necessary or advisable for the confirmation or perfection of Lessor's rights hereunder and title in and to the Equipment.

8.5    Lessee shall, at its sole cost and expense, protect and defend Lessor's title to the Equipment against all persons claiming against or through Lessee, at all times keeping the Equipment free from any legal process or encumbrance whatsoever, including, without limitation, liens, attachments, levies and executions, and shall give Lessor immediate written notice thereof and keep, save, protect, defend with counsel acceptable to Lessor, indemnify and hold Lessor harmless (collectively, "Indemnify") from and against all "Losses" and "Attorneys' Fees" (defined in Paragraph 14) caused or occasioned thereby.

8.6    The Equipment is and it shall at all times be and remain personal property notwithstanding that the Equipment or any part thereof may now be or hereafter may become in any manner affixed or attached to real property or any improvements thereon.

9.    **Care and Use of the Equipment.**  During the Term, Lessee, at its sole cost and expense, shall maintain and keep the Equipment in good repair, condition and working order, and shall use the Equipment lawfully and not alter the same without Lessor's prior written consent.

9.1    If the manufacturer of the Equipment has provided Lessee with a standard maintenance schedule therefor, such schedule will constitute minimum maintenance compliance which shall be observed by Lessee with respect to the Equipment, and Lessee upon request of Lessor, will supply Lessor with evidence of such compliance.

9.2    Without the prior written consent of Lessor, not to be unreasonably withheld, Lessee shall not make any alterations, additions or improvements to the Equipment which are permanent or which detract from its economic value or functioning utility. Any additions permitted with Lessor's consent shall belong to and immediately become the property of Lessee upon the expiration or earlier termination of the Term, unless removal of said alteration, addition or improvement causes an independent diminution in value and/or functioning ability to the particular item of Equipment.

10.  **Risk of Loss.**   From and after the date Lessee executes and delivers to Lessor the Acceptance Certificate, Lessee shall assume and bear all risks of loss of and damage to the Equipment from every cause whatsoever, whether or not insured.  The occurrence of any loss or damage to the Equipment shall not relieve Lessee of any of its obligations hereunder, including, without limitation, the obligation to pay Rent.  In the event of loss or damage to the Equipment during the Term, Lessee, at Lessor's option, shall promptly:

10.1  place the damaged Equipment in good repair, condition and working order;

10.2  replace lost or damaged Equipment with like equipment in good repair, condition and working order, with documentation creating clear title thereto in Lessor; or

10.3  pay to Lessor the then unpaid balance of the aggregate Rent due under the Lease Agreement plus the fair market value of Lessor's residual interest in the Equipment which the parties hereto agree to be an amount equal to thirty percent (30%) of Lessor's original cost for the Equipment.  Upon Lessor's receipt of such payment, Lessor shall, at Lessee's request, transfer to Lessee Lessor's interest in the Equipment, in which case, such Equipment shall be accepted by Lessee in its then condition and location "AS IS","WHERE IS" and "WITH ALL FAULTS", and without warranty, express or implied.

DBL/pcm 09/04/2002 9:10 AM
G:\301501\DOCS\SILI Lease Agreement Format v3.doc

11. **Insurance.**  During the Term and thereafter until the Equipment is redelivered to Lessor, Lessee, at its sole cost and expense, shall keep the Equipment insured pursuant to insurance policies payable to Lessor, against all risks of loss or damage from every cause whatsoever for the greater of the total Rent for the full Term, or the full undepreciated replacement value of new equipment substantially similar to the Equipment.  Lessee shall also carry public liability insurance, both personal injury and property damage, covering the Equipment and its use.  All such insurance shall be of a type, form, in amounts and with companies and contain terms and conditions satisfactory to Lessor, naming Lessor as an additional named insured.  Lessee shall deliver to Lessor certificates of insurance or other evidence satisfactory to Lessor, showing the existence of insurance in accordance herewith, and the terms, conditions and payments therefor, not later than the due date for the second payment of Rent hereunder, and all such policies and Certificates of insurance shall expressly provide that Lessor shall be given a minimum of thirty (30) days' written notice by the insurer prior to cancellation, termination, change or modification of the insurance coverage so provided.  The proceeds of insurance payable to and received by Lessor as a result of loss or damage to the Equipment shall be applied, at the option of Lessor:

11.1  toward the replacement, restoration or repair of the Equipment; or

11.2  toward payment of the obligations of Lessee hereunder and Lessee hereby irrevocably appoints Lessor as Lessee's attorney-in-fact to make claim for, receive payment of and execute and endorse all documents, checks or drafts received in payment for any loss or damage to the Equipment insured under any such insurance policy.

12. **Determination of Fair Market Value and Fair Rental Value.**  In the event there should be a dispute as to the fair market value or the fair rental value of any of the Equipment, Lessee shall, upon Lessor's written request and at Lessee's sole cost and expense, immediately obtain an independent appraiser acceptable to Lessor to make an appraisal of the Equipment.  The report of the appraiser setting forth its determination of the fair market value or fair rental value of the Equipment, as the case may be, shall be delivered to Lessor and Lessee not later than thirty (30) days following the date of Lessor's written request to Lessee for such appraisal and shall be conclusive and binding upon Lessor and Lessee.  If Lessor and Lessee cannot agree upon the choice of an independent appraiser for such purpose, a panel of three appraisers shall be chosen, one of whom shall be selected by the Lessor, the second by the Lessee and the third designated by the two selected by Lessor and Lessee.  In such case, the highest and lowest appraisals shall be disregarded and the remaining appraisal shall be deemed the fair market value or fair rental value of the Equipment, as the case may be.

13. **Taxes.**  Lessee shall pay, when due, provide evidence of payment to Lessor, and on a net after-tax basis, indemnify Lessor from and against all license and registration fees, assessments, filing or recording fees, documentary stamp taxes, sales or use taxes, personal property taxes, gross receipts taxes, excise taxes, payroll taxes including value-added taxes, and all other taxes, local, state and federal, which may now or hereafter be imposed upon the ownership, leasing, rental, sale, purchase, possession or use of the Equipment, whether assessed against Lessor or Lessee, excluding only those taxes on or measured by Lessor's net income.  Notwithstanding the foregoing, unless and until Lessor notifies Lessee in writing to the contrary, Lessee will file all required personal property tax returns and/or payroll tax returns (and a monthly basis) covering the Equipment or otherwise and will pay the personal property taxes and payroll taxes levied, assessed thereon and/or as shall be otherwise due and payable by the Lessee for any reason whatsoever and shall provide proof of filing and payment to the Lessor immediately upon demand thereof.  Upon Lessee's receipt of notice from Lessor that such personal property and/or payroll taxes have been paid by Lessor, Lessee shall immediately reimburse Lessor the amount so paid by Lessor as additional Rent plus interest as provided herein.

14. **Indemnity**.  Lessee does hereby assume liability for and does hereby agree to indemnify Lessor from and against any and all liabilities, losses, damages, penalties, claims, actions, suits, costs, expenses and disbursements (collectively, "Losses"), including without limitation, attorneys' fees and costs, including the fees attributable to such attorneys' paralegals and support staff, court costs and other legal expenses of whatever kind or nature (collectively "Attorneys' Fees") imposed on, incurred by or asserted against Lessor, and whether or not also indemnified against by any other person, in relation to or

arising out of this Lease Agreement, including, but not limited to, the payment of any lease payment and/or additional payment as contemplated herein, the breach or default by Lessee of any of its obligations under this Lease Agreement, or the manufacture, purchase, ownership, delivery, lease, possession, use, operation, condition, return or other disposition of the Equipment by Lessor or Lessee, including, without limitation, any claim for patent, trademark or copyright infringement, any claim arising out of strict liability in tort, and any taxes for which Lessee is responsible pursuant to the terms of this Lease Agreement..

15. **Surrender and Redelivery.**  Upon the expiration or earlier termination of the Term, Lessee shall return the Equipment, freight prepaid to Lessor, at its designated location in the greater metropolitan Chicago area, in good repair, condition and working order, ordinary wear and tear resulting from proper use thereof only excepted, and in a manner and to a location reasonably designated by Lessor.  If upon such expiration or termination of the Term the Lessee does not immediately return the Equipment to Lessor, at the option of Lessor in its sole discretion, such shall be deemed an extension of the Term on a month-to-month basis at double the monthly Rent provided herein and upon all other terms as provided in the Lease Agreement, subject to the right of either party to terminate such extended month-to-month lease upon thirty (30) days' prior written notice to the other, whereupon the Lessee shall immediately surrender and redeliver the Equipment to Lessor as set forth in this Paragraph.

16. **Assignment and Off-Set.**  Absent the prior written consent of Lessor, Lessee shall not assign, transfer, pledge or hypothecate this Lease Agreement, the Equipment, its right to the Equipment or its interest in this Lease Agreement or the Equipment or permit Lessee's rights under this Lease Agreement to be subject to any lien, charge or encumbrance of any nature.  Lessee covenants that its interest herein is not assignable and shall not be assigned or transferred by operation of law.  Lessor may assign this Lease Agreement and/or the Rent due hereunder without notice to Lessee.  Lessee agrees that no assignee of Lessor shall be bound to perform any duty, condition, covenant or warranty, whether express or implied, attributable to Lessor, and Lessee further agrees not to raise any claim or defense arising out of this Lease Agreement or otherwise against Lessor as a defense, counterclaim or off-set to any action by any assignee of the Lessor for the unpaid balance of Rent due under the Lease Agreement or for possession of the Equipment.  Subject to the foregoing, this Lease Agreement shall insure to the benefit of and be binding upon the heirs, legatees, personal representatives, successors and assigns of the parties hereto.

17. **Default.**  Any of the following events or conditions shall constitute an "Event of Default" under this Lease Agreement:

17.1  Lessee's failure to pay on or before the fifth (5th) of each and every month any Rent or other amount due hereunder by acceleration or otherwise, without notice being required by the Lessor hereunder;

17.2  Lessee's default in performing any term, covenant or condition hereof, or under any other agreement between Lessor and Lessee and such default is not cured within three (3) days after written notice thereof by Lessor to Lessee;

17.3  Lessee's breach of any of Lessee's covenants, representations or warranties set forth in this Lease Agreement;

17.4  seizure of the Equipment under legal process;

17.5  the filing by or against Lessee of a petition for reorganization or liquidation under the Bankruptcy Code or any amendment thereto, or any other insolvency law providing for the relief of debtors; or

17.6  the voluntary or involuntary making of any assignment of a substantial portion of its assets by Lessee for the benefit of creditors, appointment of a receiver or trustee for Lessee or for any of Lessee's assets, the institution by or against Lessee of any formal or informal proceeding for dissolution, liquidation, settlement of claims against or winding up of the affairs of Lessee, or the making by Lessee of a transfer of all or a material portion of Lessee's assets or inventory not in the ordinary course of its business, or the condition of Lessee's affairs shall so change as to, in Lessor's opinion, impair the safety of the Equipment or increase Lessor's credit  risk in connection with the lease thereof to Lessee.

**18.  Remedies Upon the Occurrence of an Event of Default.**  Upon the occurrence of an Event of Default, Lessor shall have the right to exercise any one or more of the following remedies:

18.1  without affecting Lessor's title or right to possession of the Equipment, declare immediately due and payable, sue for and recover all Rents and other amounts then accrued or thereafter accruing for the entire Term of the Lease Agreement;

18.2  require Lessee to promptly surrender and redeliver the Equipment to Lessor in the manner specified in Paragraph 15; or

18.3  repossess the Equipment, with or without notice, legal process, prior judicial hearing or liability for trespass or any other damage, which rights Lessee hereby voluntarily, intelligently and knowingly waives, and for this purpose, Lessor and/or its agents may enter upon any premises of or under the control of Lessee, for which Lessee shall indemnify Lessor from Losses and Attorneys' Fees claimed by any third party by reason of such entry and repossession and without liability for suit, action or other proceeding by Lessee, any damages occasioned by such repossession being hereby expressly waived by Lessee, and release the Equipment therefrom, and such return or repossession of the Equipment shall not terminate this Lease Agreement unless Lessor so notifies Lessee in writing.

18.3.1  Upon return or repossession of the Equipment, Lessor, at its sole option, may sell or re-lease the Equipment upon such terms as it determines, and apply the proceeds thereof to Lessee's obligations hereunder, after deducting from such proceeds all costs and expenses of repossession and disposition, including, without limitation, reasonable attorneys' fees, and an amount equal to thirty percent (30%) of the Equipment's original cost to Lessor as liquidated damages for Lessor's loss of its residual salvage value at the normal expiration of the Lease Agreement, plus any amounts due Lessor pursuant to the terms hereof with respect to depreciation.

18.3.2  Lessee shall promptly pay any resulting deficiency, together with interest from the date of the occurrence of the Event of Default, at the rate of three percent (3%) per month, or the highest contract rate permitted by law, whichever is less, and Lessor's reasonable Attorneys' Fees incurred to collect such deficiency.

18.3.3  If Lessor is unable or elects not to repossess the Equipment, the Equipment shall be deemed a total loss and Lessee shall pay to Lessor the amount due pursuant to Subparagraph 10.3.

18.4  All such remedies are cumulative and may be enforced separately or concurrently and are in addition to any and all other rights or remedies available to Lessor at law or in equity upon the occurrence of any Event of Default.

**19.  Lessor's Payment.**  If Lessee fails to pay any amounts due hereunder or to perform any of its obligations under this Lease Agreement, Lessor may, at its option, although not obligated to do so, pay such amounts or perform such obligations on behalf of Lessee.  Lessee shall reimburse Lessor the amount of any such payment, cost or performance, upon demand, and such amounts shall be deemed to be additional Rent and shall be due and be paid by Lessee to Lessor not later than the date the next periodic payment of Rent is due.

**20.  Lessee's Quiet Enjoyment of the Equipment.**  Notwithstanding any other provision of this Lease Agreement to the contrary, so long as Lessee is not in default hereunder and no Event of Default has occurred or is continuing, Lessee shall quietly enjoy use of the Equipment subject to the terms and conditions of this Lease Agreement.

**21.  Purchase Option.**  If Schedule "A" indicates that Lessee has an option to purchase the Equipment upon the expiration of the Term and an Event of Default has not occurred, or if it has occurred but is not continuing, Lessee, by giving Lessor not less than sixty (60) days' written notice prior to the Expiration Date of the Term, may elect to purchase the Equipment then leased under the terms of this Lease Agreement for an amount equal to that stated on Schedule "A", plus any applicable sales tax with respect thereto.  If Lessee elects to exercise such purchase option, the same shall be exercised by

delivery on the day such purchase option is exercised of payment, by Lessee to Lessor, in cash, by cashiers or certified check or by wire transfer as directed in Schedule "A", of the amount of the purchase price for the Equipment, with evidence satisfactory to Lessor provided by Lessee no later than the last day of the Term, that all labels, name tags or other identification material affixed to the Equipment during the Term and bearing the name of Lessor have been removed from the Equipment.  Upon payment and delivery thereof, Lessor shall, upon request of Lessee, execute and deliver to Lessee a Bill of Sale for the Equipment so purchased on an **"AS IS", "WHERE IS", "WITH ALL FAULTS"** basis, without representation or warranties of any kind whatsoever.  If Lessee does not elect to exercise the purchase option granted herein, Lessee shall return the Equipment to Lessor pursuant to the terms and conditions of Paragraph 15 upon the expiration of the Term.

22.  **Additional Representations, Warranties, Covenants and Agreements of Lessee.**  Lessee additionally represents, warrants, covenants and agrees as set forth in this Paragraph 22.

22.1  If Lessee is a corporation, limited liability company or limited partnership (an "Entity"), it is duly organized, validly existing and in good standing under the laws of the state of its formation.  Lessee is duly qualified to do business in each jurisdiction where any Equipment is to be located, has full power and authority to hold property under lease and to enter into and perform its obligations under this Lease Agreement and if Lessee is an Entity, the execution, delivery and performance by Lessee of the Lease Agreement has been duly authorized as required by all necessary action by Lessee consistent with all documents regarding Lessee's governance.

22.2  The execution, delivery and performance by Lessee of this Lease Agreement does not violate any law or governmental rule, regulation or order applicable to Lessee, does not constitute and will not contravene any provision, or constitute a default under any indenture, mortgage, contract or other instrument to which Lessee is bound, and upon execution and delivery hereof, will constitute a legal, valid and binding agreement of Lessee, enforceable in accordance with its terms.

22.3  Lessee shall pay all shipping and delivery charges and other expenses incurred in connection with the Equipment.  At the expiration or early termination of this Lease, unless Lessee purchases the Equipment or renews this Lease Agreement, Lessee, at Lessee's risk and expense, shall assemble, prepare for shipment and immediately return the Equipment to Lessor to any location designated by Lessor.  The returned Equipment shall be in good condition, repair and working order, ordinary wear and tear excepted.  Lessee, upon request of Lessor, shall provide suitable and adequate storage space at the place where Equipment is delivered hereunder or to which it was moved in accordance with this Lease Agreement, and shall permit Lessor to store such Equipment free of charge at the risk of Lessee for public liability and physical damage exposure, for a period not to exceed ninety (90) days.  During this period, Lessor will be allowed reasonable access thereto.

22.4  Lessee shall comply with all governmental ,laws, regulations, requirements and rules, all manufacturer's instructions and warranty requirements, and with conditions and requirements of all policies of insurance with respect to the Equipment and this Lease Agreement.

22.5  Lessee shall not change its name or address from that set forth above, unless it shall have given Lessor or its assigns not less than thirty (30) days' prior written notice, and Lessee shall not merge or consolidate with any other person or entity or change its identity during the Term.

22.6  Lessee shall furnish to the Lessor and/or its lender, if applicable, (a) monthly financial statements of the Lessee, as prepared by the Lessee, and accounts receivable agings not later than the fifteenth (15th) day following the end of such month; (b) quarterly financial statements not later than thirty (30) days following the end of each quarter, if prepared by the Lessee; and (c) annual reviewed and/or audited financial statements, as the case maybe, as prepared by the Lessee's outside accounting firm, not later than one-hundred twenty (120) days following the end of the Lessee's fiscal year. All of the foregoing shall be certified as being true and correct and being prepared in accordance with GAP by the CEO or President of the Lessee.

*Annual audit Review only*

*C.K.*
*LiK.*

23. **Notices.** All notices, payments or other communications required, desired or permitted to be given hereunder shall be in writing and shall be deemed sufficiently given if actually delivered in person, mailed in the United States by registered or certified mail, return receipt request, postage prepaid, sent by overnight courier, by telefax or by electronic mail, and addressed to the parties at their addresses or telefax number as set forth above, or to such other address or telefax number as either party may designate by notice so given to the other party in the aforesaid manner. Unless actual receipt of notice is required by the terms of this Lease Agreement, any notice or communication given as aforesaid shall be deemed to have been duly given, if personally delivered on the date of such delivery, if mailed, then on the third postal delivery date following the date of its mailing, if by overnight courier, then on the next business day following delivery to the courier, and if by telefax or electronic mail, then on the first business day following confirmed transmittal.

24. **Lessee's Waivers.** To the extent permitted by applicable law, Lessee hereby waives any and all rights and remedies conferred upon a lessee by Sections 2A--508 through 12A--522 of the UCC, including, but not limited to, Lessee's rights to.

24.1 cancel this Lease Agreement;
24.2 repudiate this Lease Agreement;
24.3 reject the Equipment once accepted;
24.4 revoke acceptance of the Equipment;
24.5 recover damages from Lessor for any breaches of warranty or any other reason;
24.6 a security interest in the Equipment in Lessee's possession or control for any reason;
24.7 deduct all or any part of any claimed damages resulting from Lessor's defaults, if any, under this Lease Agreement;
24.8 "cover" by making any purchase, or lease of, or contract to purchase or lease Equipment in substitution for those due from Lessor;
24.9 recover any general, special, incidental or consequential damages, for any reason whatsoever;
24.10 specific performance, replevin, detinue, sequestration, claim and delivery or the like for any Equipment identified in this Lease Agreement; and
24.11 any rights now or hereafter conferred by statute or otherwise which may require Lessor to sell, lease or otherwise use any Equipment in mitigation of Lessor's damages as set forth in Paragraph 18 or which may otherwise limit or modify any of Lessor's rights or remedies under Paragraph 18.

25. **Attorneys' Fees.** Lessee shall, upon demand, reimburse Lessor for all charges, costs, expenses and attorneys' fees incurred by Lessor: (i) in defending or protecting its interests in the Equipment; (ii) in the execution, delivery, administration, amendment and enforcement of this Lease Agreement or the collection of any installment of Rent and/or other payment due and/or contemplated under this Lease Agreement; and (iii) in any lawsuit or other legal proceedings which this Lease Agreement gives rise, including, but not limited to, actions in tort.

26. **Construction.** This Lease Agreement shall be binding and effective when signed by an officer of Lessor. Except for the perfection of any security interest or lien in any other state, this Lease Agreement shall be governed and construed in accordance with the laws of the state of Illinois. Lessee hereby consents, at Lessor's election and without limiting Lessor's right to commence an action in any other jurisdiction, to the exclusive jurisdiction and venue of any courts, whether federal, state or local, situated in the County of Cook, State of Illinois, and Lessee hereby waives any objection to improper venue or form non-convenience therein. Lessee further consents to service of process by certified mail, postage prepaid to Lessee at its address as set forth in this Lease Agreement AND LESSEE AND LESSOR WAIVE ANY RIGHT TO TRIAL BY JURY IN CONNECTION WITH ANY DISPUTE ARISING AS A RESULT OF THIS LEASE AGREEMENT.

26.1  This Lease Agreement constitutes the entire agreement between the Lessor and Lessee with respect to the subject matter hereof, and there are no understandings, representations or warranties whatsoever of any kind except as expressly set forth herein.

26.2  This Lease Agreement may not be amended except by an instrument in writing signed and delivered by both Lessor and Lessee.

26.3  If any provision of this Lease Agreement or the application thereof to either party is held to be illegal, unenforceable or otherwise invalid by governmental promulgation or court decree, such holding shall not affect the other provisions or applications of this Lease Agreement which can be given effect without the invalid provision, if any, and to this end, the parties agree that the provisions of this Lease Agreement are and shall be severable; provided, however, that if any provision of this Lease Agreement is deemed or held to be unenforceable as written, although may be enforceable by limitation thereof, such provision shall be deemed enforceable to the maximum extent permitted by law.

26.4  All Schedules referred to herein are attached hereto, incorporated herein by reference and made an integral part hereof.

26.5  The paragraph headings of this Lease Agreement are for the convenience of reference only and do not construe or limit the contents of the particular paragraphs. All references herein to "Paragraphs" or "Subparagraphs" mean the various paragraphs or subparagraphs of this Lease Agreement and the respective subparagraphs subnumbered or indented thereunder.

26.6  If there is more than one Lessee named in this Lease Agreement, the liability of each shall be joint and several.

26.7  Lessee's indemnities herein shall survive the expiration or other termination of the Term and this Lease Agreement.

26.8  This Lease Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same Lease Agreement.

26.9  No delay or failure by the Lessor to exercise any right under this Lease Agreement and no partial or single exercise of any such right shall constitute a waiver of that or any other right of Lessor hereunder unless otherwise provided herein.  A waiver by Lessor of any of Lessee's defaults hereunder shall not be deemed a waiver by Lessor of any other or subsequent defaults of Lessee.

26.10 Lessor and Lessee acknowledge that facsimile copies of signatures on a document are acceptable as original signed signatures.

DBL/pcm 09/04/2002 9:10 AM
G:\301501\DOCS\SILI Lease Agreement Format v3.doc

Lessor:

GSL OF ILL, LLC

By: _____

Title: _____

Date: _5/26/06_____

Lessee:

**CRAIG D. KROSKOB AND**
LISA KROSKOB DBA
KROSKOB FARMS

By: _____

Title: _owner_____

Date: _On  5-25-06_____

By: _____

Title: _owner_____

Date: _5-25-06_____

## Guaranty

In consideration of and in order to induce Lessor to enter into the Lease Agreement with Lessee, the undersigned, jointly and severally, absolutely, irrevocably and unconditionally guaranties to Lessor the prompt payment of all sums due to Lessor pursuant to the Lease Agreement whether for Rent or otherwise and the full and timely performance of all terms, covenants, agreements and obligations of the Lessee described in this Lease Agreement, including, without limitation, the obligations to Indemnify Lessor for any Losses or Attorneys' Fees it may incur arising out of or relating in any manner to this Lease Agreement.   Guarantor acknowledges that his (their) execution of this Guaranty and/or the pledging of collateral by the Guarantor, as applicable,  was a material inducement to Lessor entering into the Lease Agreement, and without such guaranty and/or guarantor's collateral,, as the case maybe,  Lessor would not enter into the Lease Agreement or any agreement with Lessee. In connection with such Guarantor's collateral, such collateral shall be maintained and/or treated for all purposes herein as the "Equipment" of the Lessee is required hereunder.

Guarantor:

By: CRAIG D. KROSKOB

Signature _____

Dated: _5-25 -06_____

_Craig D KrosKob_____     **(print name)**

Page 11 of 16

Guarantor:

By: LISA KROSKOB

Signature: _Lisa Kroskob_____

Dated: _5-25-06_____

**Although spouses are not asked to guaranty, the spouse of** _____ **consents and hereby acknowledges that spousal assets, if any, are accessible by Lessor for his guaranty.**

_____(print name)

Signature: _____

Guarantor:

By: _____

Signature: _____

Dated: _____

**Although spouses are not asked to guaranty, the spouse of** _____ **consents and hereby acknowledges that spousal assets, if any, are accessible by Lessor for his guaranty.**

_____(print name)

Signature: _____

DBL/pcm 09/04/2002 9:10 AM
G:\301501\DOCS\SILI Lease Agreement Format v3.doc

**Schedule "A"**

| Lessor: | Lessee: |
|---|---|
| Name:_____ | Name: _____ |
| | Name:_____ |
| Address:_____ | Address: _____ |
| City:_____ | City: _____ |
| State:_____Zip: _____ | State: _____ Zip: _____ |
| Phone: _____ | Phone: _____ |
| Fax: _____ | Fax: _____ |
| E-mail: _____ | E-mail: _____ |

**Equipment Description**
(Include Model and Serial Number, Attachments and Optional Equipment)

Equipment Location: 1) (THE ADDRESS OF LESSEE HEREINABOVE SET FORTH)
2)

Address:                                    Wire Payment Instructions:
                                           Fifth Third Bank

City:                County:_____

State:               Zip:                  ABA Routing No. 042000314

Phone:                                     For credit to Acct. No. 7232907308

Fax:                                       For further credit to GSL of Ill., LLC

| Commencement Date | Total No. and Amount of Rent Payments | Lease Fee |
|---|---|---|
| June 1, 2006 | 48 mo. @ $13,989 per month | ~~$7,500 plus atty. fees and costs~~  *c. K.*  *J.K.* |

| Expiration Date | | Security Deposit Amount |
|---|---|---|
| May 1, 2010  (48 month lease term) | | ~~Security Deposit Amount~~ *At Closing C.K. J.K.* $13,989 *First Pymt c.k. J.K.* |

Purchase Option  (Paragraph 21 of Lease)          Purchase Option Price

Page 13 of 16

X YES _____NO                             (SEE BELOW)

Notwithstanding any provision herein to the contrary, provided that the Lessee is not in default,  prior to the expiration of the initial Lease Term hereunder,  the Lessee solely shall have the right to purchase all of the Equipment hereunder upon not less than sixty (60) days prior written notice to the Lessor and the payment to the Lessor of the then outstanding balance then due hereunder as set forth herein and/or on the attached schedule, if any,  along with the payment of one hundred thousand dollars ($100,000).  The Lessee shall receive a bill of sale, on an "as is-where is" basis without any representations or warranties of any kind or type from the Lessor for all of the Equipment as contemplated herein. In addition, the Lessee shall be responsible for any sales and/or use, tax, costs and/or other expenses, if any, in connection with such transfer of ownership.

This Schedule is an integral part of that certain Equipment Lease Agreement dated June 1, 2006, by and between Lessor and Lessee and all of the terms used in the Schedule which are defined in that Equipment Lease Agreement shall have the same meaning as so defined therein.

DBL/pcm 09/04/2002 9:10 AM
G:\301501\DOCS\SILI Lease Agreement Format v3.doc

**Schedule "B"**
Delivery and Acceptance Certificate

| Lessor: | Lessee: |
|---------|---------|
| Name: _____ | Name: _C. D. Kroskob_ |
| Address: _____ | Address: _11491 RD. 12_ |
| City: _____ | City: _Ft. Morgan_ |
| State: _____ Zip: _____ | State: _CO_ Zip: _80701_ |
| Phone: _____ | Phone: _(970) 867-2017_ |
| Fax: _____ | Fax: _(970) 867-9600_ |
| E-mail: _____ | E-mail: _Kroskobfarms @ Direcway.com_ |

**Equipment Description**
(Include Model and Serial Number, Attachments and Optional Equipment)

_____

_____

Equipment Location:
Address: _____

City: _____ County: _____

State: _____ Zip: _____

Phone: _____

Fax: _____

Wire Payment Instructions:

_____

_____

_____

_____

_____

Lessee hereby certifies that the Equipment described above ("Equipment") was inspected by Lessee on _____, 20___, is of a size, design, capacity and manufacture acceptable to Lessee for lease under the Equipment Lease Agreement by and between Lessor and Lessee dated _____, 20___ ("Lease Agreement"), is suitable for Lessee's purposes, is in good working order, repair and condition, has been installed to the satisfaction of Lessee and Lessee unconditionally accepts the Equipment for all purposes of the Lease Agreement as of the date set forth below.

NOTE: Lessee, do not complete or sign this document until the Equipment has been accepted by you.

LESSEE
By: _Craig D. Kroskob_ (print)

Signature: _____

Title: _____

Date: _____

DBL/pcm 09/04/2002 9:10 AM
G:\301501\DOCS\SILI Lease Agreement Format v3.doc

DBL/pcm 09/04/2002 9:10 AM
G:\301501\DOCS\SILI Lease Agreement Format v3.doc