# *MORTGAGE*

**THIS MORTGAGE ("Mortgage") is given on March 30, 2007. The Mortgagor is Craig and Lisa Kroskob, his wife, individually, and/or dba Kroskob Farms, whose address is 11491 County Rd. 12, Ft. Morgan, CO 80701 ("Borrower" or "Mortgagor"). This Mortgage is given to GSL of Ill, LLC, an Illinois ltd. lia. co., whose address is c/o Suite 200, 660 Lasalle Place, Highland Park, Illinois 60035 ("Lender").**

Official Records of Morgan County, CO    841905
4/6/07 12:20 PM   Pgs: 9
Mortgage R: 46.00  D: $ Clerk — Connie Ingmire

**FOR RECORDERS USE ONLY**

**Borrower owes and/or is a guarantor to the Lender in the principal sum of up to Three Hundred Fifty Thousand Dollars ($350,000.00) as advanced from time to time. This debt is evidenced by Borrower's note, lease agreement and/or guaranty, as the case maybe, dated the same date as this Mortgage (hereinafter collectively referred to as the "Note"), which provides for full payment of the full debt hereof upon demand, or in the event that no demand is made, if not paid earlier, then due and payable on February 28, 2009, provided the loan evidenced by the Note is not accelerated pursuant to its terms. This Mortgage secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, late charges, attorneys fees and/or costs thereof and/or all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced to protect the security of this Mortgage; and/or (c) the performance of Borrower's covenants and agreements under this Mortgage, any and all loan documents between the Borrower and the Lender and/or the Note, as applicable. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in Ft. Morgan, CO:**

**(SEE ATTACHED LEGAL DESCRIPTION)**

**which has the common address of** _14000 Block of Rd Q_ , **("Property Address"), and Parcel # 122717000013.**

**This instrument was prepared by and after recording return to:**

**N. S. Lynn, Esq.
P. O. Box 1675
Highland Park, Ill. 60035**

EXHIBIT
7

**TOGETHER WITH** all the improvements now or hereafter erected on the property, and all easements, appurtenances, and futures now or hereafter a part of the property. All replacements and additions shall also be covered by this Mortgage. All of the foregoing is referred to in this Mortgage as the "Property."

**BORROWER COVENANTS** that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrance of record.
**BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:**

1.      **Payment of Principal and Interest; Prepayment and Late Charges.**   Borrower shall promptly pay when due the principal of and interest on and/or the lease payment, as the case maybe, of the debt evidenced by the Note and any late charges due under the Note.

2.      **Application of Payments.**      Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 shall be applied: first, to any prepayment charges due under the Note; second, to interest due; third, to principal due; and last, to any late or other charges due under the Note.

3.      **Charges; Liens.**      Borrower shall pay all taxes, assessments, charges, fees and impositions attributable to the Property which may attain priority over this Mortgage, and/or prior mortgages, leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment.   Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Mortgage unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Mortgage. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Mortgage, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

Notwithstanding any provision herein to the contrary, subject to applicable law and/or a written waiver by Lender and/or in the event that the Borrower is not making escrow deposits for real estate taxes and/or insurance premiums with a prior mortgagee, if any, Borrower shall pay to Lender on the first day of each and every month from and after the date hereof, until the Note is paid and satisfied in full, a sum ("Funds") for : (a) yearly taxes and assessments which may attain priority over this Mortgage as a lien on the Property: (b) yearly leasehold payments or ground rents on the Property, if any: (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items". Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

Lender shall apply the Funds to pay the Escrow Items. Lender shall not be required to pay Borrower any interest or earnings on the Funds. The Funds are pledged as additional security for all sums secured by the Note and/or this Mortgage.

Upon payment in full of all sums secured by this Note and/or the Mortgage, Lender shall promptly refund to the Borrower any Funds held by the Lender. In the event of default by Borrower and/or if, under paragraph 18 hereof, the Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Mortgage.

4.      **Hazard or Property Insurance.**      Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect lender's rights in the Property.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by the Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Mortgage, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Mortgage, whether or not then due. The 30 day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraph 1 or change the amount of the payments. If the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to lender to the extent of the sums secured by this Mortgage immediately prior to the acquisition.

5.      **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.**      Borrower shall occupy, establish, and/or use the Property within thirty (30) days after the execution of this Mortgage, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Mortgage. Borrower may cure such a default and reinstate, as provided herein, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Properly or other materiel impairment of the lien created by this Mortgage. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence.

6.      **Protection of Lender's Rights In the Property.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to

enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Mortgage, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph shall become additional debt of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

7.    Inspection.    Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

8.    Condemnation.    The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Mortgage, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Mortgage immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Mortgage shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the talking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provide, the proceeds shall be applied to the sums secured by this Mortgage whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect arid apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Mortgage, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraph 1 or change the amount of such payments.

9.    Borrower Not Released; Forbearance By Lender Not a Waiver.    Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release the liability of die original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

10.    Successors and Assigns Bound; Joint and Several Liability; Cosigners. The covenants and agreements of this Mortgage shall bind and benefit the successors and assigns of Lender and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Mortgage but does not execute the Note: (a) is co-signing this Mortgage only to mortgage, grant and convey that

Borrower's interest in the Property under the terms of this Mortgage; (b) is not personally obligated to pay the sums secured by this Mortgage; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent.

11.      **Loan Charges.** If the loan secured by this Mortgage is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

12.      **Notices.**        Any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing it by first class mail or facsimile transmission or facsimile transmission unless applicable law requires use of another method.  The notice shall be directed to the Mortgagors and/or the  Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower.  Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

13.      **Governing Law; Severability.**  This Mortgage shall be governed by federal law and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision. To this end the provisions of this Mortgage and the Note are declared to be severable.  In the event that any provision in this Mortgage shall be inconsistent with any provision of the Wisconsin Mortgage Foreclosure Law or similar law and/or statute (herein called the "Act") the provisions of the Act shall take precedence over the provisions of this Mortgage, but shall not invalidate or render unenforceable any other provision of this Mortgage that can be construed in a manner consistent with the Act.

         If any provision of this Mortgage shall grant to Lender any rights or remedies upon default of the Borrower which are more limited than the rights that would otherwise be vested in Lender under the Act in the absence of said provision, Lender shall be vested with the rights granted in the Act to the full extent permitted by law.

         Without limiting the generality of the foregoing, all expenses incurred by Lender to the extent reimbursable under the Act, whether incurred before or after any decree or judgment of foreclosure, and whether or not enumerated in of this Mortgage, shall be added to the indebtedness secured by this Mortgage or by the judgment of foreclosure.

14.      **Borrower's Copy.**        Borrower shall be given one conformed copy of the Note and of this Mortgage.

15.      **Transfer of the Property or a Beneficial Interest In Borrower.**        If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage.

         If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage.  If Borrower fails to pay these sums prior to the

expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

16.     Borrower's Right to Reinstate. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Mortgage discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Mortgage; or (b) entry of a judgment enforcing this Mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Mortgage and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Mortgage, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the Lien of this Mortgage, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unchanged. Upon reinstatement by Borrower, this Mortgage and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 18.

17.     Hazardous Substances.     Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting he Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. In connection with the foregoing, the Borrower hereby agrees to indemnify and hold the Lender harmless from and against any and all costs, expenses, demands and the like that it may incur with respect to indentifying, remediating and/or otherwise curing any and all Hazardous Substances, including, but not limited to, attorneys fees, environmental concern fees and the like.

As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health. safety or environmental protection.

18.     Acceleration; Remedies.     Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Mortgage (but not prior to acceleration under paragraph 16 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; {c) a date, not less than 10 days from the date the notice is given to Borrower, by which date the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result In acceleration of the sums secured by this Mortgage, foreclosure by Judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified In the notice, Lender at its option may require immediate payment in full of all sums secured by this Mortgage without further demand and/or may foreclose this Mortgage by judicial and/or non-proceeding, under direct power of sale, invocation of a STATUTORY POWER OF SALE or otherwise, as

Page 6 of 8

available to the Lender, as the Lender may, in its sole and absolute discretion, elect. Lender shall be entitled to collect and/or recover from the Mortgagor any and all expenses incurred in pursuing all of the remedies and/or foreclosure provided in this paragraph, including, but not limited to, reasonable attorneys' fees and costs thereof, costs of title evidence, costs of notice of sale and the like.

19.    Release.    Upon payment of all sums secured by this Mortgage, Lender shall release this Mortgage without charge to Borrower. Borrower shall pay any recordation costs.

20.    Waiver of Homestead and/or Right of Redemption.   To the fullest extent permitted by law, Borrower waives any and all rights of homestead exemption in the Property and/or the right to redeem the Property in the event of foreclosure and subsequent sale.

   IN WITNESS WHEREOF, Mortgagor, via the authority vested in them pursuant to law or otherwise has executed this instrument the day and year first above written.

KROSKOB FARMS

By: _____
As its _____

Craig Kroskob
_____

Lisa Kroskob
_____

**STATE OF**  )
  ) SS.
**COUNTY OF**  )

I, Norman S. Lynn , a Notary Public in and for said County, in the State aforesaid, do hereby certify that Krosbotp Parmes, Chair and hja Krosbob personally known to me to be the same person(s) whose names are subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he/she/they signed and delivered the said instrument as his/her/their own free and voluntary act, individually, and/or on behalf of the entity so designated, as aforesaid, as the case maybe, for the uses and purposes therein set forth.

GIVEN under my hand and notarial seal this 29 day of Mau , 200 7.

_____
**NOTARY PUBLIC**

"OFFICIAL SEAL"
Norman S. Lynn
Notary Public, State of Illinois
My Commission Exp. 09/26/2010

2010

EXHIBIT A

Legal Description:

The E1/2NW1/4 of Section 17, Township 3 North, Range 58 West of the 6th P.M., Morgan County, Colorado, EXCEPT that portion dedicated as a County Road, more particularly described as follows: A parcel of land in the E1/2 of Section 17, Township 3 North, Range 58 West of the 6th P.M., Morgan County, Colorado described as comencing at a point on the South right of way line of County Road Q, 30.0 feet South and 190.0 feet West of the Northeast corner of said E1/2NW1/4; thence N89°52' 18"W 30.0 feet South of and parallel to the North line of said E1/2NW1/4 along said County Road Q right of way line, 1143.2 feet, more or less to a point on the West line of said E1/2NW1/4; thence South along said line 10.0 feet; thence S89°52'18"E 40.0 feet South of and parallel to said North line of said E1/2NW1/4, 1143.2 feet, more or less; thence Northerly 10.0 feet to the point of beginning, AND EXCEPT that parcel of land conveyed to Nathan G. Midcap and Jolynn E. Midcap recorded in Book 1175 at page 958.

TOGETHER with a 30 foot easement for ingress and egress running along the East line of a parcel of land in the NE1/4NW1/4 of Section 17, Township 3 North, Range 58 West of the 6th P.M., as reserved in deed recorded in Book 1175 at page 958, and as shown on exemption survey pint recorded in Book 1175 at pages 214 and 215.

Also known and numbered as: Property in Morgan County, Fort Morgan, CO 80701