*Rules and Decisions*

---

Recently Filed Disciplinary Decisions and Complaints | Rules Governing Lawyers and Judges |
Disciplinary Reports and Decisions | Search Help and Collection Scope | Home

## DECISION FROM DISCIPLINARY REPORTS AND DECISIONS SEARCH

*Petition Allowed by the Illinois Supreme Court
and Imposing Discipline on Consent*

*Allowed May 25, 2001*

### IN THE SUPREME COURT OF ILLINOIS

In the Matter of:

**NORMAN STUART LYNN,**                    Supreme Court No. M.R. 17478

Attorney-Respondent,                       Commission No. 98 CH 99

No. 01714864.

### PETITION TO IMPOSE DISCIPLINE ON CONSENT

Mary Robinson, Administrator of the Attorney Registration and Disciplinary Commission, by her attorney, Sari W. Montgomery, pursuant to Supreme Court Rule 762(b), with the consent of Respondent Norman Stuart Lynn and the approval of a panel of the Hearing Board, petitions the Court to enter an order suspending Respondent from the practice of law in Illinois for a period of eighteen months. In support of the petition, the Administrator states:

### I. BACKGROUND AND SUMMARY OF PETITION

1. Respondent, who was admitted to practice law in Illinois on November 4, 1975, is currently the President of CPP Acquisition Group, Inc., co-manager of Chicago Cosmetics Company, LLC., and is currently engaged in the practice of law on a part-time basis. In 1992, Respondent obtained a net judgment of $21,000 on behalf of his client, General Leasing Co. Respondent later agreed to settle the debt without obtaining authority from General Leasing and executed a release on behalf of General Leasing without authority. In addition, Respondent, or someone acting at his direction, deposited the $10,000 settlement check into an account Respondent maintained for his own business purposes and converted at least $8,810.37. Respondent then made misrepresentations to an attorney for General Leasing about the judgment, settlement, and his authority to settle. Finally, in response to the Administrator's inquiry related to the above allegations, Respondent responded falsely in writing and submitted altered firm banking records in an effort to mislead the Administrator. Respondent made full restitution ten months after he received the settlement funds and before any involvement by the Administrator.

2. Respondent's affidavit is attached as Exhibit One. At the time this petition was prepared, complaint number 98 CH 99 was pending against Respondent before the Hearing Board, and the members of the Board approved the submission of this matter to the Court as an agreed matter

# APPENDIX A

pursuant to Rule 762(b)(1)(b). A copy of the Hearing Board order authorizing the submission of this matter to the Court is attached as Exhibit Two. A copy of the transcript of the Hearing Board proceedings is attached as Exhibit Three.

3. An eighteen-month suspension is within the range of sanctions imposed by this Court in imposing discipline on attorneys who, with regard to a single matter, enter into a settlement without authority, commingle and convert client funds, make misrepresentations to clients and the Administrator, and submit false evidence to the Administrator. In re Ushijima, 119 Ill.2d 51, 518 N.E.2d 73 (1987) (attorney suspended for 18 months for converting client funds and giving false testimony); In re Dombrowski, 71 Ill.2d 445, 376 N.E.2d 1007 (1978) (attorney suspended for one year for settling a case without authority, signing client's name to check and release without authority, and giving false testimony and evidence to the Inquiry Board).

## II. DESCRIPTION OF MISCONDUCT

### A. Unauthorized Settlement and Release

4. In April 1992, Respondent represented General Leasing Co. ("GLC") in a claim against Yon Ho Chong ("Chong") and Kwang Soo Lee ("Lee"), a partnership d/b/a O.K. Cleaners and Laundry ("O.K."), as a result of O.K.'s failure to comply with the terms of a lease agreement entered into with GLC.

5. On October 21, 1992, Respondent obtained judgment in favor of GLC against Chong, Lee and O.K. in the amount of $43,015.82.

6. On November 13, 1992, John Sinodis ("Sinodis"), President of GLC, sent a letter to Respondent requesting a copy of the Memorandum of Judgment entered in the case and further advising Respondent that post-judgment collection action was not desired at that time.

7. In April 1994, Lee's attorney, Myron Greenbaum ("Greenbaum"), contacted Respondent and made a settlement offer of $10,000.00 on behalf of Lee to satisfy the balance of the judgment entered against Lee, which by that time had been reduced to approximately $21,000, as a result of GLC's replevy of certain equipment it had leased to the defendants.

8. Respondent never communicated the settlement offer to GLC or any of its representatives but, on April 14, 1994, he sent a letter to Greenbaum falsely stating that GLC agreed to accept Lee's $10,000.00 settlement offer.

9. On April 15, 1994, without GLC's knowledge or authority, Respondent executed a release deed on behalf of GLC and forwarded it to Greenbaum.

### B. Commingling and Conversion of Client Funds

10. In April 1994, Respondent received a settlement check made payable to GLC in the amount of $10,000.00 which he, or someone acting at his direction, deposited into one of his business accounts.

11. Between April 20, 1994 and September 8, 1994, Respondent used at least $8,810.37 of the settlement funds belonging to GLC for his own business or personal purposes, without GLC's authority.

### C. Misrepresentations to GLC Regarding Settlement

12. On April 11, 1994, GLC consulted attorney Joseph Kincaid ("Kincaid") to pursue collection of its judgment.

13. On June 1, 1994, Kincaid contacted Respondent on behalf of GLC to discuss the O.K. judgment. During their telephone conversation, Respondent falsely advised Kincaid that the matter had been closed after the leased equipment was replevied, that the defendants had no money, and that GLC had elected not to pursue the matter any further. Respondent also advised Kincaid that he would retrieve his client file relating to the matter and review it.

14. As a result of the false representations made by Respondent to Kincaid in their telephone conversation on June 1, 1994, Kincaid determined that collection action would be unsuccessful and closed his file in the matter.

15. GLC again requested that Kincaid pursue collection action and, on January 19, 1995, Kincaid sent letters to defendants Chong and Lee requesting that they each contact him to discuss their outstanding debt to GLC.

16. In February 1995, after having learned from Lee's attorney of the $10,000 settlement, Kincaid telephoned Respondent and questioned him regarding the reported settlement. Respondent advised Kincaid that a settlement in the amount of $10,000.00 had been obtained and that, to his knowledge, a check had been issued to GLC. Respondent stated that a second check would be issued and, on February 10, 1995, he sent a check to Kincaid made payable to GLC in the amount of $10,000.00.

17. On March 23, 1995, in response to an inquiry from Kincaid for information regarding Respondent's authority to settle the matter, Respondent sent a letter to Kincaid in which he falsely stated that Tim Hartnell ("Hartnell"), a former GLC employee, had granted Respondent "certain authority in collecting and/or settling the deficiency owed by the defendants in the amount of $21,500.00 ...following the replevy of the equipment....," although Respondent had never received any such authorization.

### D. Misrepresentations and Submission of False Evidence to the Administrator

18. On May 3, 1995, Sinodis, Kincaid and Kevin Martin, Kincaid's law partner, submitted a letter to the Administrator of the Attorney Registration and Disciplinary Commission advising of Respondent's conduct, as described above.

19. On August 22, 1995, Respondent sent a letter to Counsel for the Administrator, in which he stated:

> [E]nclosed herewith please find the checking account ledger and statements for the Client Funds Account of the Firm for the period commencing April, 1994 through February, 1995...Directing your attention to April 19, 1994, you can observe that a deposit was made in the amount of $15,732.17 which included the $10,000.00 relating to the General Leasing Company matter.

Respondent enclosed a copy of the ledger sheet reflecting a deposit of $10,000.00 on April 19th in relation to "T. Hartnell" and monthly statements from the firm's client fund account for April of 1994.

20. The copy of the checking account ledger submitted by the Respondent and his letter to counsel for the Administrator were false and were intended to deceive the Administrator, because the original

checking account ledger, from which the copy was made, had been altered by Respondent, or someone at his direction, from its original form to indicate the $10,000.00 deposit on behalf of T. Hartnell on April 19th.

21. By reason of the conduct outlined above, Respondent has engaged in the following misconduct:

   a. conversion;

   b. settling a matter without the client's authority in violation of Rule 1.2(a) of the Illinois Rules of Professional Conduct;

   c. failure to keep a client reasonably informed about the status of a matter in violation of Rule 1.4(a) of the Illinois Rules of Professional Conduct;

   d. failure to hold property belonging to a client that is in a lawyer's possession in connection with a representation separate from the lawyer's own property in violation of Rule 1.15(a) of the Illinois Rules of Professional Conduct;

   e. failure to notify the client upon receiving funds in which the client has an interest and failure to promptly deliver to the client any funds that the client is entitled to receive in violation of Rule 1.15(b) of the Illinois Rules of Professional Conduct;

   f. making a statement of material fact known by the lawyer to be false in connection with a lawyer disciplinary matter in violation of Rule 8.1(a)(1) of the Illinois Rules of Professional Conduct;

   g. conduct involving dishonesty, fraud, deceit or misrepresentation in violation of Rule 8.4(a)(4) of the Illinois Rules of Professional Conduct;

   h. conduct that is prejudicial to the administration of justice in violation of Rule 8.4(a)(5) of the Illinois Rules of Professional Conduct; and

   i. conduct which tends to defeat the administration of justice or to bring the Courts or the legal profession into disrepute in violation of Supreme Court Rule 771.

### III. DESCRIPTION OF RESPONDENT'S MITIGATION EVIDENCE

22. Respondent has never been the subject of any prior disciplinary action.

23. Respondent made restitution to GLC prior to its complaint to the Administrator.

24. At all relevant times Respondent maintained at least $10,000 in other business and personal accounts.

### IV. RECOMMENDATION FOR DISCIPLINE AND DISCUSSION OF PRECEDENT

25. The Administrator respectfully requests that this Court suspend Respondent's license to practice law in Illinois for eighteen months.

26. An eighteen-month suspension is consistent with the range of sanctions imposed by this Court in imposing discipline on attorneys who, in a single matter, enter into a settlement without authority,

commingle and convert client funds, make misrepresentations to clients and the Administrator, and submit false evidence to the Administrator. Most analogous is this Court's opinion in In re Ushijima, 119 Ill.2d 51, 518 N.E.2d 73 (1987), in which the Court suspended Ushijima for eighteen months for commingling and converting a client's funds and making misstatements about the status of the converted funds in a related garnishment proceeding. Another similar case is In re Dombrowski, 71 Ill.2d 445, 376 N.E.2d 1007 (1978), in which the Court suspended the attorney for one year for settling a case without authority, signing the client's name to a check, a power of attorney, and a settlement release without authority, and giving false testimony and evidence to the Inquiry Board. Unlike Dombrowski, however, the Respondent in this case actually converted the settlement funds.

27. In In re Bizar, 97 Ill.2d 127, 454 N.E.2d 271 (1983), and In re Kitsos, 127 Ill.2d 1, 535 N.E.2d 792 (1989), the Court suspended the lawyers for one year for single instances of conversion of less than $10,000. Because the instant case also involves misrepresentations to the Administrator which were not involved in Bizar or Kitsos, a suspension of more than one year is appropriate. This Court has previously imposed suspensions of six months for misconduct related to misrepresentations to the Administrator. See, e.g., In re Mendelson, M.R. 12894, Comm. No. 95 CH 339 (November 26, 1996); In re Krakowski, M.R. 14228, Comm. No. 96 CH 823 (January 29, 1998).

28. In the instant case, Respondent's misconduct in engaging in an unauthorized settlement, signing a release without the client's authority, commingling and converting the settlement proceeds, and making misrepresentations to the client and the Administrator warrants a serious sanction. In light of the nature of the misconduct, Respondent's mitigation, and this Court's precedent, an eighteen-month suspension is appropriate.

**WHEREFORE**, the Administrator, with the consent of the Hearing Board, requests that the Court enter an order suspending Respondent from the practice of law for a period eighteen months.

Respectfully submitted,

Mary Robinson, Administrator Attorney Registration and Disciplinary Commission
By: Sari W. Montgomery

Counsel for Administrator
One Prudential Plaza
130 East Randolph Drive, #1500
Chicago, Illinois 60601
Telephone: (312) 565-2600