# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is entered into and made effective as of September 29, 2011, by and between GSL of Illinois LLC ("GSL"), and Craig D. Kroskob, Lisa D. Kroskob and Kroskob Farms LLC (collectively, the "Kroskobs").

WHEREAS GSL and the Kroskobs entered into certain transactions identified in GSL's records as Lease No. 56541, Lease No. 57389, and Promissory Note No. 58604 (the "Finance Transactions"), which include by this reference all instruments associated with each transaction; and

WHEREAS GSL is the Plaintiff and the Kroskobs are Defendants in an action currently pending in the United States District Court for the District of Colorado, case number 1:11-cv-00939-WYD-KMT ("the "Action"), wherein GSL claims that the Kroskobs are in default of their obligations under the Finance Transactions; and

WHEREAS GSL asserts that it owns and is entitled to possession of certain vehicles, equipment and other personal property used by the Kroskobs in their farming operations; that it is entitled to certain real property[1] pledged by the Kroskobs as collateral to secure the Finance Transactions; and that it is entitled to a money judgment; and

WHEREAS the Kroskobs deny that they owe the sums claimed by GSL and dispute GSL's entitlement to either the subject real property or the personal property and equipment; and

WHEREAS the parties to this Agreement wish to settle the Action amicably, without

---

[1] The subject real property is more particularly described as the East ½ of the NW 1/4 of Section 17, Township 3 North, Range 58 West of the 6th Principal Meridian, Morgan County, Colorado, also known as the 14000 Block of Road Q, Parcel #122717000013.

making any admissions of wrongdoing and without the cost, uncertainty, burden and inconvenience of further litigation; and

WHEREAS the parties participated in a settlement conference before Magistrate Judge Kathleen M. Tafoya on September 29, 2011, and reached an agreement to settle all matters in dispute between them, which agreement was made of record, and now they wish to memorialize that agreement in this written Agreement:

NOW, IN CONSIDERATION of the mutual releases and promises contained herein, the parties agree as follows:

### TERMS OF SETTLEMENT

1. The Kroskobs shall pay to GSL the sum of $700,000.00 (the "Settlement Sum") as follows:

   $350,000.00 at the time this Agreement is executed, but no later than October 15, 2011;

   $100,000.00 on or before January 1, 2012;

   $100,000.00 on or before April 1, 2012;

   $100,000.00 on or before July 1, 2012; and

   $50,000.00 on or before October 1, 2012.

   All payments shall be made with good funds by wire transfer, cashier's check, or cash.

2. All vehicles, equipment and personal property that GSL claimed in the Action, now in the possession of the Kroskobs, shall remain as the sole property of the Kroskobs, and shall remain in their possession. GSL shall execute a bill of sale, in the form attached as Exhibit A to this Agreement, transferring to the Kroskobs all of GSL's right, title and interest in and to all vehicles, equipment and other items of personal property that it

claims were sold to GSL, pledged as collateral, or otherwise transferred or encumbered as part of the Finance Transactions, on an "as is, where is" basis.

3. The Kroskobs hereby re-affirm and acknowledge of the validity of the Mortgage dated March 30, 2007, recorded on April 6, 2007, in the Official Records of Morgan County, Colorado, at reception no. 841905, which shall remain of record as security solely for the Kroskobs' obligations pursuant to this Agreement. The Kroskobs hereby voluntarily waive and relinquish all claims regarding the validity of the Mortgage, including without limitation that it was not signed by the Kroskobs or that it was improperly notarized.

4. The Kroskobs shall, within 30 days after signing this Agreement, cause a quitclaim deed to be executed by Freund Investments, LLC, and shall record said quitclaim deed in the Official Records of Morgan County. The quitclaim deed shall be in the form attached as Exhibit B to this Agreement, and shall expressly extinguish any and all right, title and/or interest that Freund Investments LLC has or claims to have in and to the subject real property under a quitclaim deed signed by the Kroskobs on January 28, 2011, and recorded on February 2, 2011, in the Official Records of Morgan County, Colorado, at reception no. 866821. Failure to secure and record a quitclaim deed, as required by this provision, shall be an event of default under this Agreement. Regardless of whether Freund Investments LLC executes a new quitclaim deed as provided here, the Kroskobs hereby affirm and acknowledge that GSL's Mortgage pre-dates and is superior to the existing Freund Investments LLC quitclaim deed.

5. The Kroskobs shall execute a quitclaim deed in the form attached as Exhibit C to this Agreement, transferring to GSL all of their right, title and interest in and to the subject

      real property to GSL.  Kroskobs shall then re-sign an identical quitclaim deed after receiving from Freund Investments LLC the quitclaim deed contemplated in Paragraph 4 of this Agreement.  These quitclaim deeds shall be tendered to and held in escrow by _____ (the "Escrow Agent").  Upon satisfaction of all obligations under this Agreement by the Kroskobs, the deeds shall be delivered to the Kroskobs. In the event of a default by the Kroskobs that is not cured as set forth below, the deeds shall be delivered to GSL, who may then record them and take title to the subject real property.

6. The Kroskobs hereby confess judgment in the amount of $350,000.00 as further security for their remaining obligations under this Agreement.  GSL hereby agrees to stay execution of the judgment for as long as Kroskobs remain in compliance with their obligations under this Agreement.  In the event the Kroskobs default on their obligations under this Agreement, and if the default is not cured after notice, as provided below, GSL shall be entitled to enforce the judgment as provided by law for judgments entered after a full trial on the merits of an action.

7. Within 10 days after receiving the final Settlement Sum payment due under the terms of this Agreement, GSL shall file with the Court, and record in the Official Records of Morgan County, Colorado, a Satisfaction of Judgment and Release, in the form attached as Exhibit D to this Agreement, acknowledging satisfaction of the confessed judgment and all of the Kroskobs' obligations under this Agreement, and releasing the judgment, the Mortgage, and any and all other liens, encumbrances, rights, title and/or interest in and to the subject real property.

8. After this Agreement is executed, GSL shall execute and file with the United States

District Court for the District of Colorado an unopposed motion to dismiss the Action with prejudice and all other documents necessary to affect a dismissal with prejudice of the Action, each party to pay their own costs and attorney fees.  The Kroskobs will cooperate with GSL in executing such documents and performing other tasks as necessary to secure dismissal of the Action with prejudice.

### DEFAULT

9. The Kroskobs shall be in default of their obligations under this Agreement if they fail to pay any part of the Settlement Sum when due, if they fail to obtain and record a quitclaim deed to the subject real property from Freund Investments LLC, or if they otherwise materially breach this Agreement.

10. After an event of default, GSL shall be obligated to provide notice of default and an opportunity to cure the default before enforcing its rights under this Agreement.  Notice of default shall be in writing, but may be given by any reasonable means, including without limitation regular mail, registered mail, certified mail, overnight delivery service, electronic mail, text message, facsimile, or personal service.  Notice shall be deemed effective on the date it is sent, unless sent by regular, registered or certified mail, in which case notice shall be deemed effective on the third day after it is sent.

11. The Kroskobs shall have ten (10) days to cure any default.  The ten day period begins to toll on the day after the effective date of GSL's written notice of default.

12. In the event of an uncured default, GSL, in addition to the remedies specified herein, shall be entitled to recover its costs and reasonable attorney fees incurred in enforcing this Agreement, the confessed judgment, and/or the Mortgage.

### MUTUAL RELEASES

13. Upon executing this Agreement, and subject to payment and receipt of the Settlement Sum, GSL and the Kroskobs hereby mutually release and forever discharge one another, their partners, members, parents, subsidiaries, affiliates, insurers, agents, attorneys, successors and assigns, jointly and severally, fully and finally, from any and all claims, counterclaims, causes of action, losses, demands, rights, damages, royalties, punitive damages, costs, expenses, attorney fees, suits in equity, injunctive actions, and liability of every kind, known or unknown, whether or not asserted in the Action, arising prior to the date of this Agreement.   After executing this Agreement, the parties' rights and obligations to one another shall be solely governed by the terms of this Agreement.

### NO ADMISSION OF WRONGDOING

14. This Agreement is a compromise of disputed claims to avoid the cost, uncertainty, burden and inconvenience of litigation.  This Agreement shall not be construed as an admission by any party of any wrongdoing against any other party.

### VOLUNTARY ACTION

15. The parties acknowledge that they are freely and voluntarily entering into this Settlement Agreement and Mutual Release un-coerced by any other person and that they have been afforded the opportunity to obtain the advice of legal counsel of their choice with regard to this instrument and this release

### OWNERSHIP OF CLAIMS

16. The parties represent and guarantee that they have not assigned, transferred, purported to have assigned or transferred to any person or entity any claim or cause of action released

herein.

## NO REPRESENTATIONS

17. The parties acknowledge that no promise or inducement which is not expressly set forth herein has been made to them in executing this Agreement, that they do not rely upon any statements or representations made by any person concerning any aspect of the released claims.

## MISTAKE

18. The parties specifically state that it is their intention to fully and forever release each other, as set forth above, even if there may exist a mistake by any party regarding any fact or issue including, but not limited to, the law or the extent of the damages sustained by them, or the legal liability therefor.

## COMPLETE AGREEMENT

19. This Agreement contains all of the agreements and understandings between the parties and supersedes any prior negotiations or proposed agreements, written or oral.

## SEVERABILITY

20. Should any provision of this Agreement be declared or be determined by any Court to be illegal, invalid, or unenforceable under present or future laws, such provisions shall be fully severable and this Agreement shall be construed and enforced as if any such illegal, invalid or unenforceable provision had never comprised a part of this Agreement.

## APPLICABLE LAW AND VENUE

21. This Agreement shall be deemed to have been made and entered into in the State of Illinois, even though some signatures may be signed in Colorado, and even though the

underlying Action was filed in the United States District Court for the District of Colorado, and this Agreement shall in all aspects be interpreted, enforced, and governed under the laws of the State of Illinois.  An action to enforce this Agreement may be brought in the United States District Court for the District of Colorado, or in the state courts in Illinois or Colorado.

### CONSTRUCTION

22. The language of all parts of this Agreement shall in all cases be construed as a whole according to its fair meaning and not strictly for or against any of the parties to this Agreement.

### FULL KNOWLEDGE

23. The parties represent and agree that they have read this Agreement and have had the opportunity to have legal counsel fully explain its contents, and any ramifications thereof, and have had sufficient time to consider this Agreement and understand its contents.  In entering into this Agreement, the parties represent that they have relied upon the advice of attorneys of their own choice concerning the legal and federal, state and local tax consequences of this Agreement, that the terms of this Agreement have been completely read by them and explained to them by their attorneys, and that the terms of this Agreement are fully understood and voluntarily accepted.

### COVENANTS NOT CONDITIONS

24. Except as otherwise expressly stated above, all agreements set forth in this writing are intended to be covenants and not conditions.  Such covenants shall be enforceable separately and shall not be contingent upon the performance of other obligations by

anyone.

## ENFORCEMENT COSTS

25. If any of the parties to this Agreement are forced to file suit or undertake any other legal action with respect to the enforcement of any provision of this Agreement, or with respect to damages occasioned by the breach of covenant or representation made herein, the party prevailing in the dispute shall be entitled to recover reasonable attorney fees and costs incurred in said action.

## BINDING EFFECT

26. This Agreement shall be binding upon and inure to the benefit of all parties and their partners, members, managers, agents, officers, directors, employees, insurers, personal and legal representatives, heirs, successors and assigns.

## MODIFICATIONS

27. This Agreement may not be changed, modified or amended and no waiver of any provision of this Agreement shall be effective except by written instrument, specifying that it amends this Agreement, signed by the party against whom the enforcement of any waiver, change, modification, extension or discharge is sought.

## EXECUTION

28. This Agreement may be executed in one or more counterparts, such counterpart to be considered an original portion of this Agreement, and all of which together shall constitute a single instrument. A facsimile or photocopy of any signature shall be as valid as the original signature. A photocopy of this Agreement may be used in lieu of an original in any action or proceeding brought to enforce or construe this Agreement.

**BY SIGNING BELOW, THE PARTIES HEREBY ENTER INTO THIS SETTLEMENT AGREEMENT AND MUTUAL RELEASE AND ACKNOWLEDGE THAT THEY HAVE CAREFULLY READ THE FOREGOING SETTLEMENT AGREEMENT AND MUTUAL RELEASE, KNOW THE CONTENTS THEREOF, FULLY UNDERSTAND IT, AND SIGN THE SAME BY THEIR OWN FREE ACT UPON THE ADVICE OF COUNSEL**:

| | |
|---|---|
| **GSL of ILL, LLC** | **Kroskob Farms, LLC** |
| By: _____<br>    Norman S. Lynn, Manager | By: _____<br>    Craig D. Kroskob, Manager |
| Approved:<br>*LiPuma Law Associates, llc* | _____<br>Craig D. Kroskob, Individually |
| | _____<br>Lisa D. Kroskob, Individually |
| _____<br>Richard T. LiPuma<br>1635 Foxtrail Drive<br>Loveland, Colorado 80538<br>(970) 776-3292<br>rich@rlipuma.com<br>Attorney for GSL of ILL, LLC | Approved:<br>JONES & KELLER, P.C.<br><br>_____<br>Ross W. Pulkrabek<br>1999 Broadway, Suite 3150<br>Denver, CO 80202<br>(303) 573-1600<br>rpulkrabek@joneskeller.com<br>Attorney for the Kroskobs |