IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 11-cv-00939-WYD-KMT

GSL of ILL, LLC

    Plaintiff,

v.

CRAIG D. KROSKOB, ET AL.

    Defendants.

## OBJECTIONS TO ORDER [DOC. #49]

Pursuant to Fed.R.Civ.P 72, Defendants Craig D. Kroskob, Lisa D. Kroskob, and Kroskob Farms, LLC (collectively "the Kroskobs"), by and through their counsel Jones & Keller, P.C., object to the Order [Doc. #49] entered by Magistrate Judge Kathleen M. Tafoya. As grounds, the Kroskobs state as follows:

### SUMMARY

Colorado's Dispute Resolution Act, Colo. Rev. Stat. § 13-22-301, *et seq.,* governs the formation and enforcement of agreements reached through mediation in Colorado. An agreement reached through mediation may be enforced as an order of the court "[i]f reduced to writing and signed by the parties . . . ." Colo. Rev. Stat. § 13-22-308(1); *see also Yaekle v. Andrews,* 195 P.3d 1101, 1108 (Colo. 2008). The Act does not preclude enforcement of an agreement by means *other than court order*, such as a claim for breach of contract. *See Yaekle,* 195 P.3d at 1107-1110. However, because the Act "protects as confidential those communications made in the presence

or at the behest of the mediator," such communications cannot be used as the basis for granting a motion to enforce an alleged settlement agreement. *Id.* at 1110.

In this case, GSL of ILL, LLC filed its "Motion to Enforce Settlement Agreement" [Doc. #46], requesting enforcement of an alleged agreement reached during a settlement conference mediated by Magistrate Judge Tafoya. No agreement was reduced to writing or signed by the parties. Relying on statements made in her presence and at her behest at the settlement conference, Magistrate Judge Tafoya nevertheless granted GSL's motion. *See* Order [Doc. #49].

Because Magistrate Judge Tafoya's Order disposes of this case, this Court must treat it as a recommendation subject to *de novo* review. This Court should reject the recommendation because it violates the Dispute Resolution Act. First, it violates the Act's provision that an agreement reached through mediation may be enforced as a court order—as opposed to a separate claim for breach of contract—only if reduced to writing and signed by the parties. Second, it violates the Act's prohibition against use of communications made at the behest of the mediator in any proceeding.

## **FACTS**

The following facts are undisputed and can be established through admissible evidence:

1. GSL commenced this action by filing its complaint in the United States District Court for the District of Colorado. *See* Verified Complaint [Doc. #1].

2. All parties have not consented to the exercise of jurisdiction of a magistrate judge. *See* Scheduling Order § 7 [Doc. #20].

2

      3. On September 29, 2011, beginning at 1:30 p.m., GSL and the Kroskobs attended a settlement conference in Denver, Colorado.

      4. Magistrate Judge Tafoya mediated the settlement conference.

      5. Shortly before 6:00 p.m., Magistrate Judge Tafoya activated her courtroom's audio recording equipment. Statements were made by all in attendance.

      6. On October 22, 2011, GSL filed its "Motion to Enforce Settlement Agreement" [Doc. #40].

      7. This Court referred GSL's motion to Magistrate Judge Tafoya. Memorandum (Oct. 24, 2011) [Doc. #41].

      8. On November 21, 2011, well after briefing had been completed on GSL's motion, GSL filed "Plaintiff GSL's Motion for Transcription of Settlement Agreement" [Doc. #46], in which it made the following relevant statements:

- "A *confidential* settlement conference was held with Magistrate Tafoya on September 29, 2011." Plaintiff GSL's Motion for Transcription of Settlement Agreement [Doc #46], ¶ 1 (emphasis added).

- "The undersigned attorney for plaintiff GSL contacted the court reporter to request a copy of the transcript memorializing the parties' settlement agreement. The Court reporter has advised that *the record is sealed,* but will be transcribed with permission from this Court." *Id.*, ¶ 4 (emphasis added).

      9. Magistrate Judge Tafoya entered a minute order stating in part as follows: "The oral hearing placing the settlement on the record may be transcribed and copies obtained by Plaintiff and Defendants Craig Kroskob and Lisa Kroskob ONLY. No other

parties may obtain copies or have access to the transcript.  The transcript, if filed, shall be filed pursuant to D.C.COLO.LCivR 7.2."  Minute Order [Doc. #48] (Nov. 29, 2011).

10. GSL has not filed a transcript with the Court.

11. There is no written, signed settlement agreement between the parties.

12. The Kroskobs have not consented in writing to disclosure of communications that occurred in Magistrate Judge Tafoya's presence or at her behest.

## OBJECTIONS TO ORDER [DOC. #49]

Pursuant to Fed.R.Civ.P. 72, the Kroskobs make the following specific written objections to Magistrate Judge Tafoya's Order [Doc. #49]:

1. Page 2, lines 5-6: The statement that the parties "reached a settlement which was intended to resolve all matters between them" is based on mediation communications, which are inadmissible.  *See* Colo. Rev. Stat. § 13-22-307.

2. Page 2, lines 7-8: The statement that "the parties agreed that instead of drafting a written document containing the essential terms of their settlement agreement, they would instead memorialize their agreement by placing the same on the official record of the court . . . ." discloses mediation communications, which are inadmissible.  *See id.*

3. Page 2, line 11: The Kroskobs object to the statement that the "court opened proceedings" in that it incorrectly implies there was a settlement conference followed by separate "proceedings."  The un-recorded portion of the settlement conference and the recorded portion were all part of the a single mediation proceeding.

4. Page 2, lines 13-14: The Kroskobs object to the statement that "No part of the mediation which had taken place earlier in the day was so recorded."  The recorded

4

portion of the mediation immediately followed the un-recorded portion, and both the recorded and unrecorded portions were part of a single mediation proceeding.

5. Page 2, line 14: The Kroskobs object to the statement, "The terms of the settlement" on the grounds that the legal conclusion of a settlement is based on mediation communications, which are inadmissible. *See id.*

6. Page 2, line 16, to page 3, line 5: The Kroskobs object to the two sentences beginning with "The court personally addressed . . ." and ending with "as put on the record by their attorneys" on the grounds that these sentences disclose mediation communications, which are inadmissible. *See id.*

7. Page 2, footnote 2: The Kroskobs object to the use of any statements made during the recorded portion of the mediation. *See id.*

8. Page 3, footnote 3: The Kroskobs object to the statement that "[t]he record made, once transcribed, will speak for itself." The Kroskobs are not questioning the accuracy of the transcript—indeed, the Kroskobs have not seen a transcript—but rather, the Kroskobs object to the disclosure or use of the transcript in any proceeding because it contains mediation communications. *See id.*

9. Page 8, lines 8-10: The Kroskobs object to the statement, "Contrary to the instant action, wherein there is proof on the court record that at the time of the agreement all parties were in full agreement over the terms of the negotiated settlement . . . ." Again, the Kroskobs are not questioning the accuracy of the audio recording or transcript; however, the audio recording and transcript cannot be disclosed, nor can they be used in any proceeding. *See id.*

10. Page 8, lines 16 to 18: The Kroskobs object to the Magistrate's "find[ing] that Craig D. Kroskob, Lisa D. Kroskob, and Kroskob Farms, LLC on the one side and GSL of ILL, LLC on the other came to a full and complete meeting of the minds over the essential terms of their contract to resolve the litigation between them." This legal conclusion can only be based on mediation communications, which are inadmissible. *See id.*

11. Page 8, lines 18 to 19: The Kroskobs object to the statement, "The recorded terms of their agreement are admissible and probative of contract formation and interpretation." The Dispute Resolution Act prohibits use of mediation communications; therefore, the recorded terms neither are admissible nor are they probative of contract formation and interpretation. *See id.*

12. Page 9, lines 1-2: The Kroskobs object to the statement, "The settlement agreement, as it was placed on the record on September 29, 2011, is therefore a fully enforceable contract to terminate litigation." The record of the mediation cannot be used in any proceeding. *See id.* In turn, the legal conclusions of a "settlement agreement" and a "fully enforceable contract to terminate litigation" are impermissibly based on that record of the mediation.

13. Page 9, lines 4-5: The Kroskobs object to Magistrate Judge Tafoya's Order granting the "Motion to Enforce Settlement Agreement." Magistrate Judge Tafoya lacks authority to enter orders on dispositive motions. Therefore, at most, that order may be treated as a recommendation to be reviewed *de novo* by the Court. As noted herein, the order is based on the impermissible use of mediation communications and on an incorrect application of Colorado law.

14.     Page 9, lines 6-7: The Kroskobs object to any filing of the transcript of the September 29, 2011 mediation because filing the transcript would be a disclosure of mediation communications in violation of Colo. Rev. Stat. § 13-22-307(2), and its use in these proceedings would violate Colo. Rev. Stat. § 13-22-307(3).  The Kroskobs also object to the suggestion that the recorded portion of the mediation was a "hearing."

15.     Page 9, lines 8-10: The Kroskobs object to use of the transcript of the September 29, 2011 mediation as the basis for any judgment because mediation communications cannot be used in any proceeding.  *See* § 13-22-307.  Further, an agreement reached at mediation is enforceable as an order of the court only if it has been reduced to writing and signed by the parties.  *See* § 13-22-308(1).

## **STANDARD OF REVIEW OF MAGISTRATE JUDGE'S ORDER**

The standard of review under Fed.R.Civ.P. 72 depends on whether the district court is reviewing an order on a non-dispositive matter, or whether the district court is reviewing a recommended disposition on a dispositive matter.  *Compare* Fed.R.Civ.P. 72(a) *with* Fed.R.Civ.P. 72(b).  *See also Ocelot Oil Corp. v. Sparrow Indus.,* 847 F.2d 1458, 1463 (10th Cir. 1988).  The difference "reflects the division in [28 U.S.C. §] 636(b) between matters as to which magistrates may issue orders and matters as to which magistrates may make only proposed findings of fact and recommendations."  *Id.*  "The Constitution requires that Article III judges exercise final decisionmaking authority."  *Id. See also U.S. v. Raddatz,* 447 U.S. 681-83, 100 S.Ct. 2406, 2415-16 (1980).

When reviewing a magistrate judge's recommended disposition of a dispositive motion, "[t]he district court must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed.R.Civ.P. 72(b)(3).  "The district

7

court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* "In order to conduct a *de novo* review a court 'should make an independent determination of the issues . . . ; [it] is not to give any special weight to the [prior] determination . . . .'" *Ocelot,* 847 F.2d at 1464 (quoting *United States v. First City Nat. Bank.,* 386 U.S. 361, 368, 87 S.Ct. 1088, 1093 (1967)). "In sum, while the district court is free . . . to place whatever reliance on the magistrate's recommendation its merit justifies, the court must review the record in light of its own independent judgment." *Id.*

Although styled as an order, Magistrate Judge Tafoya's Order [Doc. #49] makes findings of fact and conclusions of law concerning a dispositive motion. GSL's Motion to Enforce Settlement Agreement [Doc. #40] is a dispositive motion because it "requests entry of Judgment . . . ." Motion to Enforce Settlement Agreement [Doc. #40] at 3. A magistrate judge's order denying a motion to enforce a settlement agreement has been treated in this district as a recommended disposition on a dispositive motion and subject to *de novo* review. *Engineered Data Prods., Inc. v. Art Style Printing, Inc.,* 71 F.Supp.2d 1073, 1076 (D. Colo. 1999) (Kane, J.). For these reasons, Magistrate Judge Tafoya's Order must be treated as a recommended and reviewed *de novo.*

## ARGUMENT

Magistrate Judge Tafoya correctly notes in her Order that "[i]t is well established that 'issues involving the formation and construction of a purported settlement agreement are resolved by applying state contact law.'" Order at 5 (quoting *Shoels v. Klebold,* 375 F.3d 1054, 1060 (10th Cir. 2004). The "state contract law" applicable to the instant controversy is that of the State of Colorado, where the plaintiff filed this case,

8

where mediation occurred, and where an enforceable settlement agreement allegedly was formed. Magistrate Judge Tafoya's Order incorrectly applies Colorado contract law, however, by relying on the general proposition that "oral settlement agreements are enforceable," *id.,* instead of relying on the unique body of Colorado law governing the formation and enforceability of agreements reached through mediation.

The Dispute Resolution Act, Colo. Rev. Stat. §§ 13-22-301 – 313 (2011), applies to all mediations in Colorado. *See* § 13-22-312 (stating that the Dispute Resolution Act "shall apply to all mediation services or dispute resolution programs conducted in this state . . . ."). Under the Act, all mediation communications are confidential. *See* § 13-22-307. With few exceptions, none of which apply here, mediators and parties are prohibited from disclosing mediation communications unless all parties to the mediation and the mediator consent in writing. *See* § 13-22-307(2)(a).

Mediation communications disclosed in violation of the Act are inadmissible in any proceeding. *See* § 13-22-307(3)*.* Mediation communications broadly include "any oral or written communication prepared or expressed for the purposes of, in the course of, or pursuant to, any mediation services proceeding." *See* § 13-22-302(2.5).

The notable exception to the Act's definition of mediation communications is "a final written agreement . . . which has been fully executed." *See id.* Therefore, a written settlement agreement signed by the parties is admissible in a judicial proceeding, regardless of whether it was prepared at mediation. Similarly, the Act provides that a settlement agreement reached at mediation may be enforced by a court if it is "reduced to writing and signed by the parties . . . ." § 13-22-308(1).

The Colorado Supreme Court thoroughly analyzed sections 13-22-307 and -308 of the Act in *Yaekle v. Andrews,* 195 P.3d 1101 (Colo. 2008). That case was a consolidated appeal of two cases. In the first case, *Yaekle v. Andrews,* the parties concluded a half-day mediation by signing a document outlining the "basic terms of settlement." *See Yaekle,* 195 P.3d at 1104. After mediation, one of the parties began performing the agreement by making payments, "formal documents" were drafted, and the parties exchanged several letters concerning the terms of the formal documents. *See id.* at 1105. The trial court held, and the court of appeals affirmed, that the parties had entered into a binding settlement agreement.

In the second of the consolidated cases, *Chotvacs v. Lish,* the parties participated in a thirteen-hour mediation session. The mediator drafted two pages of handwritten notes that outlined the terms of a proposed settlement, but the document was not signed by the parties or their counsel. *See id.* The trial court held, and the court of appeals affirmed, that the parties had not entered into an enforceable settlement agreement. *See id.* at 1106.

On appeal to the Colorado Supreme Court, the court first differentiated the relief provided under section 13-22-308 of the Dispute Resolution Act from other means of enforcing an alleged settlement agreement. Section 13-22-308 allows a party to ask a court to reduce a written, signed settlement agreement to a court order, after which it may be enforced as a court order. *See Yaekle,* 195 P.3d at 1108. For example, if a written, signed settlement agreement is reduced to a court order, a party may enforce it through contempt proceedings. *See id.*

The Colorado Supreme Court held, however, that section 13-22-308 does not preclude the possibility of a party asserting a claim for breach of contract based on allegations of an oral settlement agreement reached through mediation. *See id.* at 1107-1110. This is the main import of the *Yaekle* case and the point on which the Colorado Supreme Court disagreed with the Colorado Court of Appeals' decision in *National Union Fire Ins. Co. of Pittsburgh v. Price,* 78 P.3d 1138 (Colo. App. 2003).

The Colorado Supreme Court also noted, however, that section 13-22-307 "protects as confidential certain 'mediation communications' and *thus bars the use of communications made in the presence or at the behest of the mediator as evidence of a binding contract.*" *Yaekle,* 195 P.3d at 1104 (emphasis added). Therefore, "there may well be some cases wherein an agreement is reached among parties in mediation, but, because all mediation communications are protected as confidential, a binding contract cannot be proven." *Id.* at 1110. The Colorado Supreme Court concluded, "In sum, section 307 of the Dispute Resolution Act protects as confidential those communications made in the presence or at the behest of the mediator, and so may hinder the efficacy of common law contract principles under some circumstances." *Id.*

Based on its analysis, the Colorado Supreme Court affirmed the court of appeals' decision in *Yaekle v. Andrews* that an enforceable settlement had been reached. *See Yaekle,* 195 P.3d at 1110-11. The Colorado Supreme Court found that the written memorandum signed by the parties and their lawyers at the conclusion of the half-day mediation session satisfied the "final written document" exception to mediation communications and, therefore, was not protected by the Dispute Resolution Act's confidential provisions. *See id.* at 1111. The Colorado Supreme Court found that the

11

document "supplies prima facie evidence of contract formation." *Id.* In addition, although the unsigned formal settlement agreement created after mediation was drafted at the mediator's behest and therefore inadmissible, *see id.,* the parties' later communications were not at the mediator's behest and supplied a sufficient evidentiary basis for finding an enforceable agreement. *See id.*

In comparison, the Colorado Supreme Court found that there was no evidence to support an enforceable settlement agreement in *Chotvacs v. Lish.*

> The alleged agreement, while reduced to writing, was neither signed by the parties nor presented to a court as a stipulation. Having thus established the alleged agreement is not enforceable as an order of the court under section 308, the question becomes whether it is enforceable at all as a contract for settlement. Once again, *the threshold determination is just what is available to a court as evidence of contract formation in light of section 307's confidentiality provisions.*

*Yaekle,* 195 P.3d at 1112 (emphasis added). Faced with no admissible evidence from which to establish the essential terms of the contract, the Colorado Supreme Court agreed that no enforceable contract existed. *See id.*

This case falls within that category of cases foreseen by the Colorado Supreme Court where the confidentiality of mediation communications prevents a party from establishing the existence of an alleged agreement. In its material respects this case is unlike *Yaekle v. Andrews* and is like *Chotvacs v. Lish.* As in *Chotvacs v. Lish,* no admissible evidence supports the existence of an enforceable agreement between GSL and the Kroskobs. The only evidence that has been offered—namely, evidence of communications made in the presence and at the behest of the mediator—is strictly inadmissible under section 13-22-307(3).

The fact that the terms of settlement cannot be established without resort to inadmissible evidence is emphasized by Magistrate Judge Tafoya's direction that "[w]ithin five days of filing the official transcript, Plaintiff shall tender to the District Court of form of Judgment consistent with the terms as set forth in the transcription of the Settlement Agreement on September 29, 2011." Order at 9.  The lack of admissible evidence of the terms of an agreement also is illustrated by the following statement in Magistrate Judge Tafoya's Order: "The court does not opine upon the terms of the settlement, the meaning or interpretation of those terms, nor does it reference or allude to any matters which may have been discussed during the mediation between the parties.  The record made, once transcribed, will speak for itself."  *Id.* at 3 n.3.

Because the Kroskobs have not consented in writing to disclosure of communications made in Magistrate Judge Tafoya's presence or at her behest, the Dispute Resolution Act prohibits GSL or Magistrate Judge Tafoya from disclosing those communications.  *See* Colo.Rev.Stat. § 13-22-307(2)(a).  Therefore, GSL's disclosure of mediation communications in its "Motion to Enforce Settlement Agreement" violates the Act, and those mediation communications "shall not be admitted into evidence in any judicial or administrative proceeding."  Colo.Rev.Stat. § 13-22-307(3).  To the extent Magistrate Judge Tafoya's Order discloses mediation communications, such disclosure also is prohibited by the Act, and the disclosed mediation communications cannot be admitted into evidence.  *See id.*  Equally, the disclosure of the transcript of the settlement conference on September 29, 2011, would be a prohibited disclosure of mediation communications made in the presence and at the behest of the mediator.

*See id.* Communications reflected by the transcript cannot be admitted into evidence to prove the existence of a binding settlement. *See id.*

To the extent Magistrate Judge Tafoya's Order draws a distinction between that part of the mediation *before* she turned on the Court's audio recording and that part of the mediation *after* she turned on the audio recording, the distinction is artificial. The recorded portion of the mediation was part and parcel of the mediation proceeding, not a separate hearing in open court. The courtroom remained closed to the public. Indeed, the audio record (and any transcript that may be made) are available only to the parties and court staff. Magistrate Judge Tafoya—a non-Article III judge whose authority under section 28 U.S.C. § 636 and D.C.Colo.LCivR. 72.1(C)(1) extends only to conducting settlement conferences, not enforcing agreements reached during them—did not switch from mediator to some other role when she activated her courtroom's audio recording equipment. Nobody is questioning Magistrate Judge Tafoya's wisdom in making an audio recording to preserve mediation communications for her and the parties' convenience; however, it cannot be sustained that a mediator transforms a mediation proceeding governed by the Dispute Resolution Act into a new, discrete court proceeding by flipping a switch and asking the parties to summarize their mediation communications on an audio record. Colorado case law undermines the idea that the Act's protections for mediation communications end when an audio recording begins. Under *Yaekle,* if statements are made "in the presence or at the behest of the mediator," they are mediation communications and cannot be used as evidence of a binding contract. *Yaekle,* 195 P.3d at 1104.

14

## **CONCLUSION**

The reasonableness or unreasonableness of the terms discussed at the settlement conference on September 29, 2011 is immaterial. With great respect for Magistrate Judge Tafoya and appreciation of her efforts to resolve this case, her recommendation as to whether an agreement was reached is immaterial, not only because this Court must conduct its own *de novo* review but also because the Dispute Resolution Act prohibits her from disclosing or using mediation communications. Indeed, undersigned counsel's personal opinions are immaterial. Under the Dispute Resolution Act and *Yaekel*—the law that governs this issue, that undersigned counsel must zealously advocate, and that the Court must follow without regard to the desirability or undesirability of a particular outcome—the only thing that *is* material is whether GSL has proved the existence of an enforceable settlement agreement by admissible evidence. GSL has not met its burden, and its "Motion to Enforce Settlement Agreement" therefore must be denied.

DATED:  January 17, 2012

/s/ Ross W. Pulkrabek
Ross W. Pulkrabek
Lucas T. Ritchie
Aaron D. Goldhamer
JONES & KELLER, P.C.
1999 Broadway, Suite 3150
Denver, CO  80202
Telephone No.: (303) 573-1600
Facsimile No.: (303) 573-8133
Email:  rpulkrabek@joneskeller.com
          lritchie@joneskeller.com
          agoldhamer@joneskeller.com

*Attorneys for Craig D. Kroskob, Lisa D. Kroskob, and Kroskob Farms, LLC*

15

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2012, a true and correct copy of the foregoing was filed and served by CM/ECF to the following:

Richard T. LiPuma
1635 Foxtail Drive
Loveland, CO 80538

/s/ Ross W. Pulkrabek